**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

STEPHEN MIHOLICS,

      Petitioner,

v.                                 Case No. 8:12-cv-2045-T-36MAP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## <u>ORDER</u>

Petitioner Stephen Miholics, an inmate in the Florida Department of Corrections proceeding *pro se*, initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1).  He challenges his convictions for aggravated assault on a law enforcement officer entered in 2008 in the Sixth Judicial Circuit, Pasco County, Florida. Respondent filed a response (Dkt. 6) and Miholics filed a reply (Dkt. 14).  Upon review, the petition must be denied.

### Procedural History

Miholics was charged with two counts of aggravated assault on a law enforcement officer.  (Dkt. 8, Ex. A, pp. 20-21.)  A jury convicted Miholics as charged.  (*Id.*, pp. 125, 126.)  He was sentenced to concurrent terms of fifteen years in prison as a prison releasee reoffender.  (*Id.*, pp. 140-142.)  The state appellate court *per curiam* affirmed his

convictions and sentences.  (Dkt. 8, Ex. F, p. 103.)

Miholics filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Dkt. 8, Ex. G, pp. 1-40.)  The state court summarily denied his motion.  (*Id.*, pp. 41-65.)  The state appellate court *per curiam* affirmed the order of denial.  (Id., p. 96.)  Respondent does not contest the timeliness of Miholics's federal habeas petition.

## Factual Background[1]

Deputies John Ardolino and Rodney Linville of the Pasco County Sheriff's Office responded to a call regarding screaming and breaking glass at the home where Miholics lived with several family members shortly before 11:00 p.m. on October 16, 2007.  Miholics approached them in the front yard.  Both deputies observed Miholics holding objects in his hands.  Ardolino described the objects as bladed weapons that appeared to be knives, and Linville described the objects as metallic and having the appearance of some type of weapon. They also heard Miholics yelling threats and indicating that they were going to have to kill him.

Miholics failed to comply with repeated orders to drop the objects he was holding.  The deputies stated they feared being stabbed.  They observed Miholics wave the objects in the air and saw him lunge forward.  When Miholics lunged, Ardolino, who was standing closer to Miholics than Linville was, shot Miholics in the chest from about ten to fifteen feet away.   A neighbor across the street, Timothy Goyette, observed the incident.   His description of events was consistent with that of the deputies.  The objects, which were recovered, were described at trial as a spatula and a table or butter knife.

---

[1]The factual background is derived from the briefs on direct appeal and the evidence presented at trial.

Miholics and several of his family members also testified. Elizabeth Miholics, his sister, and Dorothy Miholics, his mother, testified that they did not have any sort of sharp knives in the home. Miholics testified that he had been making food and was still carrying a butter knife and a spatula when he left the house. He further stated that he wanted to turn himself in due to an outstanding warrant for his arrest and was raising his hands when he was shot.

## Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under

§ 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693.  In other words, "AEDPA prevents

defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010).

The state appellate court affirmed Miholics's judgment and sentence and affirmed the denial of Miholics's postconviction motion in *per curiam* decisions without written opinions. These decisions warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court. *Cullen v. Pinholster,* _U.S._, 131 S. Ct. 1388, 1398 (2011). Miholics must overcome by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**Discussion**

## Ground One

On November 30, 2007, the State filed a motion to perpetuate the testimony of Ardolino under Florida Rule of Criminal Procedure 3.190.  (Dkt. 8, Ex. A, pp. 22-23.)  According to the motion, Ardolino was a material witness who had recently accepted a position sponsored by the Department of State, was scheduled to leave the country on December 1, 2007, and was to be stationed in Afghanistan until December 2008. (Id.)  The events that led to Miholics's criminal charges took place on October 16, 2007, and he was charged by information filed on November 21, 2007.  (Id., p. 20.)  At a hearing on the motion conducted on November 30, 2007, the State explained:

> [Ardolino] is leaving for Afghanistan.  It's a contract position with the Department of State, Judge, which is included in the information.  There's a possibility he will not even return, Judge.  We have to always consider that.  It is a war zone in Afghanistan.
>
> He's going to be there at least until December of 2008.  He's leaving tomorrow.  He does training and won't be able to return.  He's under contract with the Department of State.  So we don't know if he will be granted leave to come for a court hearing.  I'm sure any subpoena sent to him overseas wouldn't be binding since it's not in this country and you'd be out of the country in Afghanistan.
>
> One of the reasons to grant this, Judge, is the fact that he will be unavailable.  As you know, speedy trial expires April 15, 2008.  He won't be here at that time.  They demanded speedy trial.  As a material witness, he won't be available and won't be able to proceed with him.

(Id, pp. 250-51.)[2]

The trial court granted the State's motion to perpetuate Ardolino's testimony. Ardolino's deposition was then taken before the court.  Miholics's request to proceed *pro se* during the same hearing was granted, and he represented himself during his cross-

---

[2]Trial was conducted on May 19-21, 2008.  It appears that Miholics waived his right to a speedy trial in March of 2008.  (Dkt. 8, Ex. A, State Court Docket.)

examination of Ardolino.  Miholics attempted to question Ardolino about a 2003 car chase in which Ardolino was allegedly involved.  (Id., pp. 269-72.)  When the State objected to relevancy, Miholics explained that he was trying to establish Ardolino's "history of overreacting in situations." (Id. p. 270.)  The court sustained the State's objections.  (Id., pp. 269-72.)  At trial, the jury was shown a tape of Ardolino's deposition.[3]

Miholics asserts that the state trial court abused its discretion in granting the motion to perpetuate Ardolino's testimony, and that this decision resulted in a Confrontation Clause violation.  He states that the taped deposition should not have been introduced at trial because, contrary to *Crawford v. Washington*, 541 U.S. 36 (2004), Ardolino was not unavailable and Miholics's prior opportunity to cross-examine Ardolino was inadequate.  Miholics raised this claim on direct appeal.  The state appellate court rejected it by *per curiam* affirming Miholics's convictions and sentences.

Florida Rule of Criminal Procedure 3.190(i) states that either party may seek an order to perpetuate testimony upon affidavit that a prospective witness resides beyond the territorial jurisdiction of the court or may be unable to attend or be prevented from attending a trial or hearing; that the witness's testimony is material; and that it is necessary to take the deposition to prevent a failure of justice.[4]

To the extent Miholics's argument rests on whether the trial court erred according to the procedures or provisions of Rule 3.190, he fails to present a valid claim for federal

---

[3] Portions of the deposition during which the State objected to Miholics's questioning of Ardolino and the court ruled on the objections were redacted from the version of the tape shown to the jury.  (Dkt. 8, Ex. C, pp. 134-38.)

[4] At the time the State filed the motion to perpetuate testimony, this provision was contained in subsection (j) of Rule 3.190.  *See* Fla. R. Crim. P. 3.190 (2007); *In re Amendments to the Florida Rules of Criminal Procedure*, 26 So.3d 534 (Fla. 2009).

habeas review.  Federal habeas relief is available to correct errors of federal constitutional dimension, not to remedy errors based solely on interpretation or application of state law. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Accordingly, claims based solely on state law are not cognizable in a federal habeas petition.  *See Branan v. Booth*, 861 F.2d 1507 (11th Cir. 1988); *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983).  Thus, this aspect of Miholics's argument cannot provide federal habeas relief.

Miholics's federal claim alleging a Confrontation Clause violation also must fail.  The Confrontation Clause of the Sixth Amendment provides that a criminal defendant has the right to be confronted with the witnesses against him.  Under *Crawford*, testimonial out-of-court statements may be admitted if (1) the declarant is unavailable and (2) the defendant had a prior opportunity to cross-examine the declarant.  541 U.S. at 59, 68.  A statement is testimonial "when the circumstances objectively indicate . . . that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006); *see Crawford*, 541 U.S. at 52.  Prior testimony at a preliminary hearing is considered testimonial.  *Crawford*, 541 U.S. at 68.

Miholics contends that the two criteria described in *Crawford* were not satisfied. First, Miholics asserts that Ardolino was not unavailable to testify at trial.  He claims that the State did not attempt to have Ardolino return from Afghanistan and did not demonstrate that his attendance could not be procured.  The record reflects the state court's conclusion that Ardolino was unavailable.  Implicit in the court's initial decision to grant the State's motion to perpetuate testimony was a determination that Ardolino would not be available

for trial.  The matter of Ardolino's availability was discussed at the start of trial, with the defense arguing that while it might be inconvenient for Ardolino to return, he could do so because he was a United States citizen and there were flights from Afghanistan.  The court concluded that Ardolino was unavailable, specifically stating that, "If he's voluntarily beyond the reach of the Court, that would make him unavailable." (Dkt. 8, Ex. B, p. 6.)

Miholics does not dispute that Ardolino was out of the country at the time of his trial. Nevertheless, he asserts that the State failed to show Ardolino was unavailable and claims that the State did not attempt to obtain Ardolino's presence.  *See Barber v. Page*, 390 U.S. 719, 724-25 (1968) ("[A] witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial.").  However, the action required by the government to produce a witness involves "a question of reasonableness." *Ohio v. Roberts*, 448 U.S. 56, 74 (1980) (citation omitted) (overruled on other grounds by *Crawford*, 541 U.S. 36).[5]  Furthermore, although it may be possible to conclude that the government could have taken additional action in a given case, "the great improbability that such efforts would have resulted in locating the witness, and would have led to her production at trial, neutralizes any intimation that a concept of reasonableness required their execution."  *Id.* at 76.

Miholics does not establish a constitutional violation.  Before the trial court determined immediately prior to the start of trial that Ardolino was unavailable, the only information provided to the court came from defense counsel, who stated, "I don't believe

---

[5] *See, e.g., United States v. Tirado-Tirado*, 563 F.3d 117, 123 n.3 (5th Cir. 2009) (noting that *Crawford* did not alter the definition of unavailability for purposes of the Confrontation Clause).

the State has made any effort to serve him, as he is on the other side of the globe." (Dkt. 8, Ex. B, pp. 5-6.) Miholics has not established that the State failed to make a reasonable good-faith effort to obtain Ardolino's presence.[6] Based on the circumstances, the state court determined that Ardolino was unavailable.[7] Miholics does not show that the state court's rejection of his claim with regard to Ardolino's availability was contrary to or an unreasonable application of controlling Supreme Court precedent. *See id.* at 74, 76; *see also Mancusi v. Stubbs*, 408 U.S. 204, 212-13 (1972) (there was no reason to disturb the state court's finding that a witness living in another country was unavailable, as the State had no authority to compel the attendance of the witness).[8]

---

[6] In his reply, Miholics identifies for the first time several potential alternative means for presenting Ardolino's testimony, such as video-conference or "cooperation between the State of Florida and the Federal Authorities" to bring Ardolino to Florida. (Dkt. 14, p. 9.) This aspect of his claim is unexhausted. Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckei*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). To exhaust a claim, a petitioner must fairly present his federal claims to the state court. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). This requirement applies to a broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004). Miholics did not present these supporting facts to the state court on direct appeal with regard to Ardolino's unavailability. (Dkt. 8, Ex. F, pp. 1-40.) Therefore, he failed to fairly present the claim to the state court. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.") (citation omitted). Miholics cannot return to state court to file a second direct appeal. *See* Fla. R. App. P. 9.140. This unexhausted claim is procedurally defaulted and barred from federal habeas review. *See Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) ("[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."). Miholics does not assert that an exception applies to allow review of his defaulted claim. Notwithstanding, Miholics's argument does not change the conclusion that he failed to demonstrate a Confrontation Clause violation on the basis of Ardolino's unavailability.

[7] A trial court's determination of whether a witness is available is subject to an abuse of discretion standard on appeal. *State v. Contreras*, 979 So.2d 896, 907-08 (Fla. 2008); *Stano v. State*, 473 So.2d 1282, 1286 (Fla. 1985).

[8] To the extent Miholics may raise a claim that the State did not comply with the terms of Florida Rule of Criminal Procedure 3.190 in attempting to secure Ardolino's presence, he is not entitled to federal habeas relief. This claim involves the application of state procedural rules, which is not a valid claim for federal habeas proceedings. *See McGuire*, 502 U.S. at 67-68.

Miholics also asserts that his right to confrontation was violated because his opportunity to cross-examine Ardolino during the deposition was insufficient in three ways. He asserts that (1) the court prevented him from questioning Ardolino about the alleged prior incident; (2) he did not have sufficient time to prepare for cross-examination; and (3) he was incapable of conducting sufficient cross-examination while representing himself following an inadequate hearing under *Faretta v. California*, 422 U.S. 806 (1975).

None of these arguments establishes a Confrontation Clause violation.  The Confrontation Clause "guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *United States v. Owens*, 484 U.S. 554, 559 (1989) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987)).  Preliminarily, the record reflects that Miholics had the opportunity to confront Ardolino and to question him during the deposition.  He conducted three rounds of cross-examination, asking about the facts surrounding the offenses and Ardolino's shooting of Miholics.

As addressed, Miholics attempted to cross-examine Ardolino about a car chase, which does not appear to have any connection to Miholics or his case, in which Miholics states Ardolino used excessive force.  Miholics believes Ardolino used excessive force when he shot Miholics and that the prior incident would show Ardolino had a history of using excessive force.  Miholics theorizes that Ardolino and Linville were motivated to testify about Miholics's behavior during the incident in a way that would provide a rationale for the use of excessive force.

When Miholics attempted to question Ardolino about this prior incident during the deposition, the court sustained the State's relevancy objection.  Miholics does not show that

a limit on his ability to question Ardolino about an issue deemed irrelevant to the facts of his case was improper or resulted in a violation of his right to confront Ardolino.[9]  Miholics had the opportunity to cross-examine Ardolino about Miholics's case, and did so.  He does not establish a Confrontation Clause violation on this basis. *See Owens*, 484 U.S. at 559.

Nor is Miholics entitled to relief on his assertion that his right to confrontation was violated because he did not have enough time to prepare for the deposition and to investigate other witnesses who could have contradicted Ardolino's testimony.   As addressed, Miholics had the opportunity to cross-examine Ardolino, and did question him about the offenses with which Miholics was charged.  Miholics does not establish how he was harmed by the timing of the hearing and deposition other than by noting that he was not able to ask Ardolino questions that the court found irrelevant.  He does not establish that his ability to question Ardolino about matters relevant to this case was limited or compromised.  Additionally, Miholics's claim is speculative and unsubstantiated with regard to investigating other potential witnesses who might have contradicted Ardolino's statements because he does not identify them or specify what they would have said.  Miholics establishes no Confrontation Clause violation with regard to this aspect of his claim.  *See id.*

Finally, Miholics argues that his prior opportunity to cross-examine Ardolino was inadequate because he was not competent to undertake a *pro se* cross-examination.  He asserts that, prior to permitting him to proceed *pro se*, the trial court conducted an

_____

[9] A defendant does not "have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."  *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)).

insufficient *Faretta* inquiry.  Specifically, Miholics claims that the court failed to inform him of the dangers of representing himself and did not explain that the deposition might be his only opportunity to confront and cross-examine Ardolino.

The record reflects that the court complied with *Faretta* when Miholics expressed his desire to proceed *pro se*.  Under the Sixth Amendment, the accused is afforded the right to present his defense.  "Although not stated in the Amendment in so many words, the right to self-representation–to make one's own defense personally–is . . . necessarily implied by the structure of the Amendment." *Faretta*, 422 U.S. at 819.  "[I]n order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Id.* at 835.  Accordingly, the defendant should be made aware of the dangers and disadvantages of representing himself.  *Id.*

Therefore, to satisfy *Faretta* and ensure that the defendant's choice is knowingly and voluntarily made, the defendant must clearly and unequivocally assert his right to self-representation, and the court must conduct a waiver hearing to confirm that the defendant understands the disadvantages of self-representation.  *See Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1064-65 (11th Cir. 1986).

Miholics initially informed the court that he wanted to represent himself, and further stated his desire to proceed *pro se* when the court asked him if he wanted to do so.  (Dkt. 8, Ex. A, pp. 231, 241.)[10]  The court addressed Miholics's lack of legal training and skills

---

[10] Miholics initially sought to discharge counsel on the basis that counsel was performing deficiently. The court denied this request after inquiring of Miholics and counsel.  (pp. 231-240.)  *See Nelson v. State*, 274 So.2d 256 (Fla. 4th DCA 1973) (when a defendant asks that his counsel be discharged due to incompetence, the trial court must determine whether adequate grounds exist to do so).  Miholics does not appear to raise the adequacy of the court's *Nelson* inquiry as a claim for relief in his federal habeas petition. Even if his claim is construed as such, it  would not be cognizable in a federal habeas petition because the question of whether the state court complied with Florida's procedures for addressing a motion to discharge counsel is solely a

to participate in the deposition, and suggested that these were reasons why representing himself might be unwise.  (Id., pp. 240-41.)  In response to questions from the court, Miholics indicated that he understood the court would hold him to the same standards as an attorney, that he had never represented himself, that no one was forcing him to represent himself, and that he talked to counsel about this course of action.  (Id., pp. 242-44.)  The court also asked for input from counsel, who was concerned that Miholics was not adequately informed about the proceedings and would not be capable of sufficient participation in the deposition.  (Id., pp. 247-49.)  The court asked if Miholics had "anything further," but Miholics responded that he did not.  (Id., pp. 249.)  The court found that Miholics's decision to represent himself was free and voluntary and was made with an understanding of the possible detriments of doing so.  (Id., pp. 249-50.)

Miholics clearly asserted that he wished to proceed *pro se*, and the record supports the conclusion that Miholics understood the risks of representing himself following the court's inquiry.  Miholics does not allege that he was unaware the State intended to utilize the deposition testimony at trial, or that he failed to understand Ardolino would be unavailable.  Miholics does not demonstrate that the proceedings were insufficient under *Faretta*.  Thus, Miholics is unable to sustain his contention that his confrontation rights were violated because of an insufficient opportunity to cross-examine Ardolino.[11]

Miholics does not establish a Confrontation Clause violation.  Accordingly, Miholics

---

matter of state law.  *See Branan*, 861 F.2d 1507l ; *Carrizales*, 699 F.2d 1053.

[11] To the extent this portion of Miholic's argument may be construed as containing an independent, substantive claim that the state court violated his federal rights by failing to conduct adequate proceedings under *Faretta*, he has not shown entitlement to relief.  The court complied with the requirements of *Faretta* prior to permitting Miholics to represent himself.

cannot demonstrate that the state appellate court's rejection of his claim on direct appeal was contrary to or an unreasonable application of controlling Supreme Court precedent, or was based on an unreasonable determination of the facts.  Miholics is not entitled to relief on Ground One.

<u>Ground Three</u>

Miholics argues that counsel was ineffective for not proffering evidence of Ardolino's alleged prior use of excessive force, as well as information about a pending internal affairs investigation that Miholics claims was ongoing. As addressed, Miholics believed that information about prior incidents of excessive force would have provided a "plausible motive" for the deputies' testimony about the incident and shown their bias or motivation. (Dkt. 1, p. 12.)  He asserts that a proffer would have put this evidence before the jury and the appellate court.

Miholics alleges ineffective assistance of counsel, a difficult claim to sustain.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.   According to *Strickland*, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's

> errors were so serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).   In order to show deficient

performance, a petitioner must demonstrate that "in light of all the circumstances, the

identified acts or omissions [of counsel] were outside the wide range of professionally

competent assistance."   *Strickland*, 466 U.S. at 690.   However, "counsel is strongly

presumed to have rendered adequate assistance and made all significant decisions in the

exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual

ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on

the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Miholics must demonstrate that counsel's alleged errors prejudiced the defense

because "[a]n error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the

judgment."   *Id.* at 691-92.   To show prejudice, a petitioner must show "a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different.   A reasonable probability is a probability sufficient to undermine

confidence in the outcome."   *Id.* at 694.

Counsel's strategic choices "made after thorough investigation of law and facts

relevant to plausible options are virtually unchallengeable; and strategic choices made after

less than complete investigation are reasonable precisely to the extent that reasonable

professional judgments support the limitations on investigation." *Id.* at 690-91.  A petitioner

cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done.  Nor
> is the test even what most good lawyers would have done.  We ask only

> whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Pinholster*, 131 S. Ct. at 1410 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

Miholics presented his claim that counsel was ineffective for not proffering evidence of Ardolino's prior use of excessive force in his postconviction motion. The state court summarily denied this argument:

Defendant claims counsel was ineffective for failing to proffer the prior history of Deputy Ardolino's use of excessive force. This claim is directly refuted by the record. At a hearing to perpetuate the testimony of Deputy Ardolino held prior to trial, the Defendant, at that time representing himself, attempted to question Deputy Ardolino with regard to some prior incidents involving Deputy Ardolino and what Defendant perceived as excessive force, but Defendant's questions were objected to by the State and the objections were sustained. At trial, counsel for Defendant renewed the Defense's objection to the prior evidentiary ruling sustaining the State's objection to the introduction of evidence of past use of excessive force by Deputy Ardolino. The judge at trial refused to overturn the ruling made at the hearing to perpetuate testimony. Therefore, counsel cannot be deemed ineffective for not presenting evidence he was barred from presenting at both a pre-trial hearing and upon a renewed attempt to introduce this evidence at the beginning of the trial itself. This claim is denied.

(Dkt. 8, Ex. G, pp. 45-46) (court's record citations omitted)

Miholics does not overcome the deference afforded to the postconviction court's determination that counsel's performance was not deficient.[12] Miholics does not demonstrate that counsel was ineffective for not attempting to present evidence about a matter that the court already determined was inadmissible. As the state court noted, counsel raised the issue prior to the start of trial, stating that he did not want to waive objections to the evidentiary rulings made at the deposition. (Dkt. 8, Ex. B, pp. 8-9.) Further, Miholics does not establish any prior incidents where Ardolino used excessive force, nor does he establish or explain the alleged ongoing internal affairs investigation. Additionally, while Miholics asserts that counsel should have proffered testimony regarding "any other incidents involving Ardolino's use of excessive force" beyond the high-speed

---

[12] It appears that Miholics only refers to trial proceedings. However, to the extent his ineffective assistance of counsel claim may concern the portion of the hearing on the motion to perpetuate involving the cross-examination of Ardolino, counsel cannot be deemed ineffective when Miholics was proceeding *pro se*. *See Faretta*, 422 U.S. at 834 n.46 ("[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"). Miholics began representing himself before any questioning of Ardolino. He does not allege that counsel should have proffered information prior to this point.

chase, he does not explain or describe the other events or establish that such evidence existed or was available.  (Dkt. 1, p. 12.)  Under these circumstances, Miholics fails to demonstrate that the state court's rejection of his ineffective assistance claim was an unreasonable application of *Strickland*, or was based on an unreasonable determination of the facts.  Miholics is not entitled to relief on Ground Three.

<u>Ground Two</u>

Miholics was charged with two counts of aggravated assault on a law enforcement officer.  Ardolino was listed as the victim on count one, and Linville was listed as the victim on count two.  Miholics argues that counsel was ineffective when he failed to adequately argue his motion for judgment of acquittal.  First, he contends that counsel only challenged the State's evidence with regard to Linville.  Second, he contends that counsel failed to argue the State did not present sufficient evidence to establish that the objects he was holding during the incident constituted deadly weapons under applicable state law definitions.

An assault is defined as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." § 784.011, Fla. Stat.  Aggravated assault occurs when a person commits assault either with a deadly weapon without intent to kill, or with an intent to commit a felony.  § 784.021(1), Fla. Stat.  Miholics was charged with using a deadly weapon in the commission of both assaults.  (Dkt. 8, Ex. A, pp. 20-21.)  The aggravated assault statute does not define a weapon or deadly weapon.  § 784.021, Fla. Stat.

The jury was given the standard aggravated assault instruction, which provides that

a weapon is a deadly weapon if it is used or threatened to be used in a way likely to produce death or great bodily harm.  (Dkt. 8, Ex. E, pp. 478-79; 483.)  *See* Fla. Std. Jury Inst. (Crim.) 8.2.  Miholics claims that the spatula and table knife he had could not be considered deadly weapons under this definition, or under the definition provided in another statutory section, § 790.001(13), Fla. Stat.[13]  Thus, he asserts, because the objects were not deadly weapons, the deputies could not have had the well-founded fear of imminent violence required to convict him of aggravated assault.

Miholics brought this claim of ineffective assistance of counsel in his postconviction motion.  The state court summarily denied it:

> This claim is refuted by the record.  Trial counsel challenged both counts of the information.  Defendant insists that the Court was required to take into consideration the fact that under § 790.001(13), Florida Statutes, as amended in 2006, the definition of "weapon" excludes a "blunt bladed table knife."  However, the definition in § 790.001(13), Florida Statutes, is applicable to Chapter 790 and the statute under which Defendant was charged is Chapter 784, Florida Statutes.  The case cited by the Defendant supporting the use of this section to define the term "weapon" involved a charge of convicted felon in possession of a concealed weapon, an offense under Chapter 790.  Again, the Court notes that a different chapter of the Florida Statutes is involved in this case.  Furthermore, the Defendant goes on to cite multiple cases holding that it is the jury as the trier of fact that determines whether the Defendant is guilty of carrying a deadly weapon based upon the circumstances surrounding the charge. . . .
>
> To properly allege a claim such as Defendant's, a movant should state sufficient facts to show that "[h]e may very well have prevailed on a more artfully presented motion for acquittal based upon the evidence he alleges was presented against him at trial."  Boykin v. State, 725 So. 2d 1203 (Fla. 2d DCA 1999).  However, when there is no showing that a motion for judgment of acquittal had a likelihood of success, a movant has not presented a facially sufficient claim of ineffectiveness of counsel.  Neal v. State, 854 So. 2d 666, 670 (Fla. 2d DCA 2003).  Defendant has failed to

---

[13] Section 790.001(13), Fla. Stat., provides: "'Weapon' means any dirk, knife, metallic knuckles, slingshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife, plastic knife, or blunt-bladed table knife."

meet this standard.

Defendant has not shown that he may very well have prevailed on a more artfully presented motion for acquittal. Defendant claims that counsel should have argued that there was no possible way Deputy Ardolino had a well-founded fear of imminent assault by the Defendant. Defendant asserts that trial counsel's argument that Deputy Linville did not have a well-founded fear of assault by the Defendant because Defendant would have had to "go through the field training officer (Ardolino) to get to Deputy Linville" should have been accompanied by the argument that Deputy Ardolino's fear was not well-founded either.

The Court ruled that the issue of Deputy Linville's imminent fear is a question for the jury. There is no logical reason to conclude that had trial counsel argued that there was no way Deputy Ardolino had the necessary imminent fear of assault by the Defendant, the judge would have granted the judgment of acquittal. Deputy Ardolino was *in front* of Deputy Linville and trial counsel's entire argument for Deputy Linville's lack of imminent fear was that the Defendant would have had to go "through" Ardolino to get to him. The judge ruled that Linville's fear was an issue for the jury and it is unreasonable to suggest that the judge would have decided in favor of the Defendant on the issue of the non-existence of imminent fear in Ardolino, who was standing *in front* of Linville, between Linville and the Defendant, a fact argued by trial counsel as the basis for lack of imminent fear in Linville.

Lastly, it is established case law that the issue of whether an instrument is a deadly weapon in an aggravated assault case is an issue for the jury. Smith v. State, 969 So.2d 452 (Fla. 1st DCA 2007); Bass v. State, 172 So.2d 614 (Fla. 2d DCA 1965). Furthermore, Defendant has conceded this multiple times in his motion. There is no reasonable foundation for Defendant's argument that had trial counsel argued the language of § 790.001(13), which defines "weapon" for the purposes of Chapter 790, Florida Statutes, of which the Statute under which Defendant was charged, § 784.07, Florida Statutes, is not a part, that counsel may very well would have prevailed on his motion for judgment of acquittal. This claim is denied.

(Dkt. 8, Ex. G at pp. 42-44.)

The state court's determination is entitled to deference, and the record supports the denial of this argument. First, Miholics does not show entitlement to relief on his assertion that counsel was ineffective because he only argued the motion as to count two, concerning Linville. As the state court noted, counsel stated that he was moving for a judgment of acquittal on both counts. (Dkt. 8, Ex. E, p. 335.) Counsel went on to argue

that the State presented insufficient evidence to show that Linville had a well-founded fear of imminent violence. Miholics fails to describe what assertions counsel should have raised in support of an argument that the State failed to prove this element with regard to Ardolino. Moreover, the state trial court determined whether Linville had a well-founded fear of imminent violence was a jury question. Even if counsel had made more specific argument that the evidence did not show Ardolino had a well-founded fear of imminent violence, it appears that this determination also would have been a jury question. Thus, there is support for the state court's finding that Miholics failed to meet his burden under *Strickland* as to this portion of his claim.

Second, Miholics is not entitled to relief on the basis that counsel failed to argue the State did not present sufficient evidence that the objects were deadly weapons. The state court found that counsel was not ineffective for failing to argue the applicability of § 790.001(13), Fla. Stat., which excludes blunt-bladed table knives from the definition of weapon for purposes of Chapter 790, because Miholics was not charged under a statute listed in Chapter 790. The state court's determination of state law must be given deference. *See Will v. Sec'y for Dep't of Corr.*, 278 Fed.App'x 902, 908 (11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's construction of its own law.'") (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).

Additionally, Miholics is not entitled to relief to the extent he asserts that counsel should have argued that the objects were not deadly weapons due to the nature of their

use.  Cases involving aggravated assault consistently hold that a deadly weapon is any instrument that is likely to cause death or great bodily harm when used in the manner contemplated by its design, or because of the way it is used during the crime.  *See Michaud v. State*, 47 So.3d 374, 376 (Fla. 5th DCA 2010)*; D.B.B. v. State*, 997 So.2d 484, 485 (Fla. 2d DCA 2008); *J.W. v. State*, 807 So.2d 148, 149 (Fla. 2d DCA 2002).  This aligns with the standard aggravated assault instruction, which was read to the jury in Miholics's case, and which defines a deadly weapon as a weapon that is used or threatened to be used in a way likely to produce death or great bodily harm.  *See* Fla. Std. Jury Inst. (Crim.) 8.2.

Moreover, as the state court emphasized, Florida law provides that whether an object constitutes a deadly weapon is typically a factual determination to be made by the jury.  *See Michaud*, 47 So.3d at 376; *Duba v. State*, 446 So.2d 1167, 1169 (Fla. 5th DCA 1984).  The trial court came to this conclusion in denying Miholics's motion for judgment of acquittal.  The question of whether the State provided sufficient evidence to show Miholics had a deadly weapon was properly presented to the jury, which was provided standard instructions with regard to Florida law.  There is support for the state court's conclusion that, had counsel argued the motion for judgment of acquittal as Miholics now claims he should have, this argument likely would have failed.[14]  Consequently, Miholics

---

[14] Miholics states in his reply that, if counsel had adequately argued the motion for judgment of acquittal, it would have preserved the question for appellate review.  To the extent this is intended as a substantive claim of ineffective assistance of trial counsel, Miholics cannot bring a new claim in his reply.  *See Pruitt v. United States*, 274 F.3d 1315, 1318-19 (11th Cir. 2001); *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000).  Additionally, it is unexhausted because he did not raise it in his postconviction motion.  (Dkt. 8, Ex. G, pp. 1-40.) *See O'Sullivan v. Boerckel*, 526 U.S. at 842.  Miholics cannot return to state court to file a successive postconviction motion.  *See* Fla. R. Crim. P. 3.850(h).  The claim is therefore procedurally defaulted and barred from federal habeas review.  *See Smith v. Jones*, 256 F.3d at 1138.  Miholics does not assert that an exception applies to allow review of his defaulted claim.  *See id.*  To the extent Miholics presents this in support of the claim of ineffective assistance raised in Ground Two of the federal habeas petition, it

has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim.  He is not entitled to relief on Ground Two.

Any of Petitioner's allegations that are not specifically addressed herein have been found to be without merit.

Accordingly, it is **ORDERED AND ADJUDGED** that Miholics's petition for writ of habeas corpus (Dkt. 1) is **DENIED**.  The Clerk is instructed to enter judgment against Miholics and close this case.

It is further **ORDERED** that Miholics is not entitled to a certificate of appealability. A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition.  28 U.S.C. § 2253(c)(1).  A district court must first issue a certificate of appealability (COA).  *Id.*  "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, Miholics "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Miholics has not made this showing.  Finally, because Miholics is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

---

likewise cannot provide relief.  If a petitioner raises an ineffective assistance of counsel claim in state court, but alleges different supporting facts in his federal habeas petition, he has failed to fairly present the federal claim to the state court.  *See Weeks v. Jones*, 26 F.3d 1030, 1044-46 (11th Cir. 1994).

**ORDERED** in Tampa, Florida, on September 11, 2015.

Charlene Edwards Honeywell
United States District Judge

Copy to:
Stephen Miholics
Counsel of Record